IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **KEVIN REID ALTHOUSE,** § | |
|         **PETITIONER,** § | |
| § | |
| **v.** § | **CIVIL CASE NO. 3:18-CV-3091-B-BK** |
| § | |
| **LORIE DAVIS, DIRECTOR,** § | |
| **TEXAS DEPARTMENT OF CRIMINAL** § | |
| **JUSTICE, CORRECTIONAL** § | |
| **INSTITUTIONS DIVISION DIV.,** § | |
|         **RESPONDENT.** § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Kevin Reid Althouse's petition for writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge for case management, including findings and a recommended disposition. Upon review of the relevant pleadings and applicable law, the Court concludes that the petition fails in part on procedural grounds and in part on the merits and, thus, should be **DENIED**.

**I.    BACKGROUND**

Althouse pled guilty to aggravated assault and theft of property and was sentenced to 25 years' imprisonment. *State v. Althouse*, Nos. F-9854103-IR and F-9854179-LR (265th Judicial Dist. Court, Dallas Cty., Texas., 1999). In 2012, Althouse was released on parole. His parole was revoked on March 1, 2018. The Texas Court of Criminal Appeals subsequently denied state habeas relief without written order. *Ex parte Althouse*, No. WR45,883-23, Doc. 27-1 at 2 (Tex. Crim. App. Oct. 3, 2018). Althouse then filed this timely, *pro se*, federal habeas petition, challenging his parole revocation on due process grounds. Doc. 8 (*Amended Petition*).

Respondent argues that Althouse's second claim is unexhausted and procedurally barred and that the others lack merit. Doc. 26. Althouse has filed a reply in opposition. Doc. 30.[1]

## II. PROCEDURALLY BARRED CLAIM

A petitioner must fully exhaust state remedies by fairly presenting the factual and legal basis of any claim to the highest state court for review before seeking federal habeas relief. *See* 28 U.S.C. § 2254(b); *Morris v. Dretke*, 413 F.3d 484, 490-91 (5th Cir. 2005). A Texas prisoner may satisfy that requirement by presenting both the factual and legal substance of his claims to the Texas Court of Criminal Appeals ("TCCA") in a petition for discretionary review or in an application for a state writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). Failure to exhaust is generally a procedural bar to federal habeas review, although the federal court may excuse the bar if the petitioner can demonstrate either cause or prejudice for the default or that the court's failure to consider the claims will result in a fundamental miscarriage of justice. *Ries v. Quarterman*, 522 F.3d 517, 523-24 (5th Cir. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Althouse alleges in Ground Two that the Board of Pardons and Parole lacked jurisdiction to revoke his parole because it failed to provide counsel and overcome the presumption that he

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases provides that "the petition must name as respondent the state officer who has custody" of petitioner. Because petitioner challenges a parole revocation that has resulted in his incarceration in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID), its director has custody of him. TDCJ-CID Director Lorie Davis was therefore substituted for "TDCJ-Parole Division," which was named as respondent in the *Amended Petition*. Doc. 8 at 1. The Court overrules Petitioner's objections to this substitution raised in his *Motion for the Court to Instruct the Clerk as to the Case Title*. Doc. 25.

was mentally disabled based on an adjudication from Pennsylvania. However, he concedes that he only raised his second claim in a request to reopen hearing or reinstate supervision filed more than a month after his state habeas was denied, and it was not considered by the TCCA because it was untimely. Doc. 30 at 1; Doc. 27-1 at 41; Doc. 8 at 5. Nevertheless, he asks "this Court to interpret this exhaustion of raising this issue through a state administrative remedy as preserving this issue for federal intervention." Doc. 30 at 1. The Court declines the invitation, as Althouse has not met the procedural requirements for exhaustion described *supra*. Indeed, Texas law does not permit a motion for rehearing of an order that denies habeas corpus relief. *See* TEX. R. APP. P. 79.2(d). As such, the TCCA did not have an opportunity to consider Althouse's claim or any of his evidence and his second claim remains unexhausted.

Furthermore, Althouse has not alleged or shown cause for the default and actual prejudice, or that a fundamental miscarriage of justice would occur if the Court were to refuse to consider his claim. *See Coleman*, 501 U.S. at 750; *see also Martinez v. Ryan*, 566 U.S. 1, 13, (2012) ("only where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default"). Accordingly, Ground Two should be dismissed with prejudice as unexhausted and procedurally barred.

### III. REMAINING CLAIMS LACK MERIT

A petitioner is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), because the state court's decision is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted). Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (quoting *Richter*, 562 U.S. at 102). Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision," federal habeas relief should not be granted. *Richter*, 562 U.S. at 102 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *see Richter*, 562 U.S. at 101 ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law") (quotations and quoted case omitted; emphasis in original).

### A. No Constitutional Right to Counsel at Revocation Hearing

Althouse claims that he was denied the right to appointment of counsel during the parole revocation. Doc. 8 at 5. A parolee, however, has no absolute right to counsel during parole

revocation proceedings. *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973); *United States v. Carrillo*, 660 F.3d 914, 925 (5th Cir. 2011) (explaining "parolees are not automatically entitled to appointed counsel at revocation hearings"). Rather the decision to appoint counsel is left to the sound discretion by the state authority charged with the responsibility of administering the parole system. *Gagnon*, 411 U.S. at 790-91. Also, an "admission to having committed another serious crime creates the very sort of situation in which counsel need not ordinarily be provided." *Gagnon*, 411 U.S. at 791.

In this case, relying on Trina Caldwell's affidavit, the state habeas court found that Althouse did not meet the criteria for appointment of counsel:

> No attorney was appointed to [Althouse] because, according to the hearing officer, the allegations were not complex, he admitted the allegations, he had received a new conviction, and he understood the proceeding and could speak for himself. The hearing officer noted that [Althouse] had an IQ of 89 and reported completion of his GED and affirmed he could read and write English. It was noted that [Althouse] had been diagnosed with ADHD and depression but he was not prescribed medication for either. It was noted that [Althouse] was lucid, denied any auditory or visual hallucinations, and was capable of [sic] articulating his defense.

Doc. 27-1 at 29. The state court's determination is entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (noting that Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" in a subsequent federal habeas proceeding and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

Althouse also has not demonstrated that the hearing officer abused his or her discretion in denying the appointment of counsel when Althouse had previously been classified by the Texas

Board of Pardons and Paroles as "Special Needs/Mentally Ill." Doc. 8 at 5. His reliance on the holding in *Ex parte Taylor*, 957 S.W.2d 43, 47-48 (Tex. Crim. App. 1997) (per curiam) is misplaced, as that court did not hold "'that a mentally impaired' parolee is entitled to . . . counsel at his parole revocation hearing," as he suggests, Doc. 30 at 2, but only summarized the circumstances clarified in *Gagnon* that *may* justify the appointment of counsel.

### B.  Parole Revocation Hearing Afforded Due Process

Althouse complains that permitting him only five days to prepare for his parole revocation hearing and to contact his witnesses was insufficient. Doc. 8 at 6. He asserts that because he was incarcerated and indigent, he "absolutely had no way to notify any witnesses—specifically his father, Larry Althouse, and his father's girlfriend, Ramona Polk—of the impending hearing and to request that they testify about mitigating circumstances, including his "lifelong mental illness," attempted suicides, and admission to Green Oaks Hospital, a psychiatric facility, on the same day that the parole warrant issued. Doc. 8 at 6; Doc. 30 at 6. Althouse explains that, while incarcerated, he "had no stamps, envelope, paper to send letter, nor access to call my witnesses" and that "[l]ocal mail service to Dallas was 7-8 days." Doc. 8 at 6. He avers that he also had "already used the 5 free letters per month provided by TDCJ-CID." Doc. 30 at 6.

According to Althouse, his mitigation evidence was "substantial enough" that the Board of Pardons and Parole "would not have recommended revocation" and would have reinstated his supervision. Doc. 30 at 7. He asserts that his father presented credible, convincing evidence 20 years earlier at his trial and again at his 2014 revocation hearing, which resulted in his supervision being reinstated. Doc. 30 at 9. Althouse maintains that copies of Green Oaks

Hospital's files, which Polk could have brought at the hearing and which were subsequently lost, would have shown that he was not guilty of changing his home address without permission. Doc. 30 at 8. He statess:

> Being on my own at the revocation hearing without legal counsel and without witnesses to help me make these facts known, my mental impairments (attention span, focus, concentration, judgment and insight) prevented me from understanding the importance of bringing forward during the hearing the issue of the suicide behavior caused by major depression on June 9, 2017.

Doc. 30 at 7.

Although parole revocation proceedings are "not a part of a criminal prosecution," they must still conform with the following minimum due process requirements: (1) written notice of the alleged parole violations; (2) disclosure to the parolee of the evidence against him; (3) an opportunity to be heard in person and present witnesses and documentary evidence; (4) the conditional right to cross-examine and confront witnesses; (5) a neutral decision-maker; and (6) a written statement as to the evidence relied upon and the reasons for revoking parole. *Gagnon*, 411 U.S. at 781, 786; *Morrissey Brewer*, 408 U.S. 471, 484-90 (1972). The Supreme Court has held that only notice of the violations and an opportunity to call witnesses are required, which Althouse undisputedly received. *Gagnon*, 411 U.S. at 786; Morrissey, 408 U.S. at 488–89.

Relying on Caldwell's affidavit, the state court denied relief:

> [Althouse] signed papers acknowledging the hearing date. [Althouse] could have notified his potential witnesses of the date himself. [Althouse] could have objected to proceeding without his "requested" witnesses (his girlfriend and his father). [Althouse] fails to allege what evidence either of these witnesses would have presented that would impact the revocation decision. [Althouse]'s parole was revoked based on the new conviction, failure to pay supervision fees and crime victim fund fees and failure to reside in a specified place as approved by his parole officer.

Doc. 27-1 at 30.

Clearly Althouse received the minimal due process that was due him. He did not suggest, at any time in the revocation proceedings, nor does he suggest now, that there were any substantial reasons—apart from his lifelong mental illness, suicide attempts, and admission in a mental facility—that would have justified or mitigated the violations and made revocation inappropriate. Further, the hearing officer relied on Althouse's new conviction for possession of a controlled substance, and his admissions that he did not live in an approved location or pay the required fees. Doc. 27-1 at 36. As such, the state court's denial of the third ground was reasonable and not contrary to clearly established federal law.

### C. Presence of both Parole Officers did not Violate Petitioner's Due Process Rights

Lastly, Althouse complains that the presence of both his former and current parole officers, Lena Pouncy and Cornelius Gray, denied him "a fair and impartial revocation hearing." Doc. 8 at 6; Doc. 9 at 1-2. He asserts that only one parole officer may be present at a revocation hearing under 37 TEX. ADMIN. CODE § 147.5(a)(1)(C), and that Pouncy "dominate[d] the hearing" and used her supervisory position to intimidate and influence Gray's final recommendation. Doc. 8 at 6; Doc. 9 at 1-2. Further, Althouse maintains that (1) Pouncy testified to matters contained in the case file, which Gray had access to, (2) she was personally biased against Althouse, and (3) "her actions were in retaliation for [his] previous complaints to the Ombudsman and Regional Director regarding her supervision." Doc. 9 at 1-2.

The state habeas court rejected this claim:

Both the hearing officer and Gray recommended revocation. Thus, [Althouse]'s revocation was not based solely on Gray's recommendation. Further, [Althouse] has failed to show that Pouncy' s presence at the hearing coerced Gray to change

> his recommendation to revoke. There is no proof that Pouncy and Gray were in the hearing simultaneously with the possible exception, if any, of when Pouncy testified (if Gray attended and was present during the hearing as [Althouse]'s current parole officer). It appears that Pouncy was a witness to prove the allegations regarding monetary payments because she was [Althouse]'s parole officer at that time.

Doc. 27-1 at 29-30.

In any event, to the extent Althouse claims that Section 147.5(a)(1)(C) was not followed, violations of state law alone do not provide grounds for federal habeas relief. *See Manning v. Blackburn*, 786 F.2d 710, 711 (5th Cir. 1986). Federal habeas relief is available only for the vindication of rights existing under federal law. *Id.* Moreover, Althouse does not claim that he objected to the presence or testimony of either parole officer. That notwithstanding, even assuming a cognizable federal due process claim, Althouse's assertion that Pouncy's presence at the hearing compelled Gray to change his recommendation to revoke is self-serving and conclusory and, thus, plainly insufficient to establish actual prejudice. *See Williams v. Johnson*, 171 F.3d 300, 307 & n.9 (5th Cir. 1999) (finding in parole revocation context that court "may not grant habeas relief unless the error at issue 'had substantial and injurious effect or influence in determining' the proceeding's outcome" (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993))).

Thus, the state court's determination was neither contrary to, nor involved an unreasonable application, of clearly established federal law. The fourth claim, therefore, fails.

### IV.   DISCOVERY NOT REQUIRED

Althouse requests the Court to reconsider the denial of his prior motion to subpoena his June 2017 psychiatric treatment records. Doc. 22 (*Motion for Reconsideration of Denial to*

*Subpoena Psychiatric Treatment Records*).  He claims he needs those records to support his assertion that he was denied the right to appointed counsel during the parole revocation because he was mentally impaired.  However, Althouse has not alleged, much less, demonstrated good cause to permit discovery.  *See* Rule 6 of the RULES GOVERNING SECTION 2254 PROCEEDINGS (permitting discovery only upon a showing of good cause); *see also Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (addressing good cause standard).  "[T]o establish good cause, the petitioner must demonstrate that 'a factual dispute, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing.'"  *Lave v. Dretke*, 416 F.3d 372, 381 (5th Cir. 2005) (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994)).  Thus, Althouse is not entitled to conduct discovery.

V. **CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus should be **DENIED**.

**SO RECOMMENDED** on August 19, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).